UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE SCHREINER,

       Plaintiff,

       v.

CITY OF GRESHAM and REBECCA
A. SILVA, in her capacity as Personal
Representative for the ESTATE OF
TC SILVA,

       Defendants.

Civil No. 07-1809-HA
Portland Division
OPINION AND ORDER

HAGGERTY, District Judge:

       Plaintiff Michelle Schreiner brings a Complaint against defendants asserting claims under 42 U.S.C. § 1983; the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12131-12165; and Section 504 of the 1973 Rehabilitations Act. Defendants move for Summary Judgment [27]. For the following reasons, defendants' Motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

1 - OPINION AND ORDER

The following factual summary is stated in a light favorable to plaintiff, the non-moving party. Additional facts will be addressed as necessary in analyzing defendants' Motion.

On December 10, 2005, Gresham Police Officer TC Silva received a dispatch call requesting that he proceed to plaintiff's location to provide medical assistance. Plaintiff Michelle Schreiner was suffering a diabetic episode due to low blood sugar and was attempting to inject herself with insulin while using a bent needle. Had plaintiff been successful in injecting herself with insulin, her situation would have deteriorated. One of plaintiff's friends had dialed 911 requesting that paramedics come because plaintiff was incoherent and was in need of medical assistance.

When Officer Silva arrived, plaintiff was hunched over in a chair holding a syringe with a bent needle. Officer Silva was told that plaintiff was a diabetic and that she was not trying to hurt herself, but that she would not, or could not, put the needle down. Medical personnel were staging outside until police officers on the scene informed them that it was safe to assist plaintiff. Officer Silva began talking with plaintiff and ordered her to drop the syringe. Plaintiff was unable to comply due to her medical condition. At this point, she was slipping in and out of consciousness. According to defendants, plaintiff was defiant, though not physically aggressive.

Firefighter Eric Byrne, a paramedic, entered the apartment where plaintiff was located and believed plaintiff was suffering from a diabetic episode. Officer Silva did not consult with Byrne regarding how best to assist plaintiff. Officer Silva and another officer on the scene decided to taser plaintiff to force her to drop the syringe. Plaintiff's friend pleaded with Officer Silva not to taser plaintiff. Plaintiff dropped the syringe and as she attempted to pick it up, Officer Silva pinned plaintiff's arm to the table and tased her on the shoulder. Defendants dispute that plaintiff dropped the syringe before she was tased.

After tasing plaintiff, Officer Silva handcuffed her and paramedics administered intravenous treatment to plaintiff. The paramedics had not requested that plaintiff be handcuffed. While

2 - OPINION AND ORDER

plaintiff was handcuffed, Officer Silva allegedly stated that he thought it was a suicide call and plaintiff questioned who might be "stupid enough to call this a suicide attempt." Pl.'s Ex. 10 at 71. Officer Silva denies thinking or suggesting that he thought it was a suicide attempt. At that point, Officer Silva tased plaintiff a second time. Defendants deny that plaintiff was tased a second time.

**STANDARDS**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. County of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a

3 - OPINION AND ORDER

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Defendants seek summary judgment on plaintiff's first claim under the Fourth Amendment, second claim for Fourteenth Amendment substantive due process violations, third claim for Fourteenth Amendment equal protection violations, and fourth claim for discrimination under the ADA and 1973 Rehabilitation Act.

**1.      Excessive Force**

Plaintiff's first and second claims for relief are brought pursuant to § 1983 and allege that the force used by Officer Silva violated her rights under the Fourth and Fourteenth Amendments.  The Fourth Amendment provides protection against unreasonable seizures and the Fourteenth Amendment provides protection against unreasonable and arbitrary violations of a person's right to substantive due process.

"[S]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotations and citations omitted).  In *Graham*, the Supreme Court set forth what is known as the "more-specific-provision rule." *Co. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).  Pursuant to the more-specific-provision rule, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Id*. at 842; (citation and quotations omitted).  Therefore, "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham*, 490 U.S. at 394; (citation omitted).

Plaintiff advances claims for excessive force under § 1983, alleging violations of both the Fourth and Fourteenth Amendments. Defendant contends that plaintiff was not seized for purposes of the Fourth Amendment and that the force used by Officer Silva was not so excessive as to "shock the conscience," and therefore the use of force falls outside the purview of the Fourteenth Amendment's protections. This court's analysis begins by determining whether plaintiff was seized within the meaning of the Fourth Amendment.

Defendants contend that plaintiff was not was not seized within the meaning of the Fourth Amendment because Officer Silva was furnishing solicited aid in an emergency rather than acting to "enforce the law, deter, or incarcerate." *Peete v. Metro. Gov't of Nashville and Davidson County*, 486 F.3d 217, 221 (6th Cir. 2007). In *Peete*, a woman called 911 to request medical attention for her grandson who was suffering from an epileptic seizure. *Id*. at 220. The defendant paramedics restrained the grandson in an effort to keep him from moving and to protect themselves. *Id*. The paramedics "were attempting to help him, although they badly botched the job," and he died after the defendants accidentally cut off his air supply. *Id*. at 222. The Sixth Circuit held that the grandson had not been seized for purposes of the Fourth Amendment, reasoning that the grandson was unconscious at the time he was restrained and "could not perceive any restraint on his liberty or otherwise feel compelled to submit to a governmental show of force." *Id* at 221. Moreover, the court noted that there are "no cases applying the Fourth Amendment to paramedics coming to the aid of an unconscious individual as a result of a 911 call," and that the Fourth Amendment is inapplicable when force is used "to render solicited aid in an emergency." *Id.* at 220-21.

Plaintiff contends that the holding in *Peete* is contrary to controlling law in the Ninth Circuit and, moreover, is inapposite to the facts presented here. This court agrees.

As a primary matter the rule set forth in *Peete* is inapplicable to this case. Though not lucid, plaintiff was conscious at the time she was seized, Officer Silva was a police officer, rather than a

5 - OPINION AND ORDER

paramedic, and he was not necessarily offering medical assistance. *But see Mills v. Hall*, No. 06-15689, 2008 WL 2397652, *8 (E.D. Mich. June 10, 2008)(extending *Peete* to a situation where the conscious plaintiff was seized by a defendant police officer acting to assist paramedics).

More importantly, the Ninth Circuit and the Supreme Court have long utilized an objective test in determining whether a Fourth Amendment seizure has taken place, and an officer's subjective reasoning is irrelevant to that analysis. *See e.g. Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (holding that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify the action'")(quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)); *U.S. v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009); *Bryan v. McPherson*, No. 08-5562, 2009 WL 5064477, *7 (9th Cir. Dec. 28, 2009)(stating that the same basic excessive force analysis should be utilized regardless of whether the force is designed to punish or help an individual).

A Fourth Amendment seizure occurs when there is "an intentional acquisition of physical control" and in light of all the circumstances, "a reasonable person would have believed that he was not free to leave." *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009)(quoting *Brower v. County of Inyo*, 489 U.S. 593, 596 (1988) and *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Officer Silva plainly intended to acquire control over plaintiff and a reasonable person would not have felt free to leave once tasered and handcuffed. Plaintiff was seized within the meaning of the Fourth Amendment.

Plaintiff's claim of unreasonable force is examined under the Fourth Amendment's prohibition against unreasonable seizures. *Graham*, 490 U.S. at 394. The court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397. "Stated another way, we must 'balance the amount of force applied against the

need for that force.'" *Bryan*, 2009 WL 5064477 at *3; (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)).

Viewing the facts in the light most favorable to plaintiff, a jury could conclude that Officer Silva used excessive force in executing his seizure of plaintiff. *See id*. at *4;(holding that a taser constitutes "an intermediate, significant level of force that must be justified by a strong government interest that *compels* the employment of such force)(citations and quotations omitted). Because this court finds that all aspects of plaintiff's excessive force claim fall within the purview of the Fourth Amendment, plaintiff's Fourteenth Amendment claim is dismissed pursuant to the "more-specific-provision rule."

**2.      Equal Protection**

Plaintiff's third claim for relief alleges violations of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff contends that Officer Silva's actions were, in part, motivated by a discriminatory animus.

In order to prevail on her equal protection claim, plaintiff must demonstrate that Officer Silva, acting under color of state law, discriminated against her as a member of "an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). To survive summary judgment, plaintiff must set forth evidence from which a reasonable trier of fact could conclude by a preponderance of the evidence that Officer Silva "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).

In *Bingham v. City of Manhattan Beach*, a black man challenged the legality of traffic stop and arrest conducted by a white police officer. 341 F.3d 939 (9th Cir. 2003). The plaintiff in *Bingham* argued that because he was black and the defendant officer white, and because he

7 - OPINION AND ORDER

contended the traffic stop was unreasonable, he had sufficiently raised an inference of racial discrimination. *Id*. at 948. The Ninth Circuit held that he had "failed to produce any evidence of discriminatory intent," and that a reasonable trier of fact could not find that the actions taken were at least partially racially motivated. *Id*. at 949.

     Assuming that diabetics are members of a protected class, plaintiff's equal protection claim fails. Plaintiff's equal protection claim is similar to that set forth in *Bingham*. Plaintiff contends that she has created a triable issue of fact because she is a diabetic, Officer Silva knew she was a diabetic, and Officer Silva used excessive force against her in violation of police procedures.[1] It is clear that this unfortunate incident would not have occurred had plaintiff not been a diabetic, however, there is nothing to suggest that Officer Silva was motivated by a discriminatory animus directed at diabetics. The evidence taken in the light most favorable to plaintiff suggests that Officer Silva's use of force was out of proportion with any need for force, but not that he was motivated by anything resembling discriminatory animus. Accordingly, plaintiff's equal protection claim is dismissed.

/ / / /

/ / / /

---

[1] Plaintiff's contention that Officer Silva had a history of "aggressive conduct towards diabetics" mischaracterizes the evidence of record and fails to create a triable issue of fact. Pl.'s Mem. in Opp'n 17.

3.    **ADA and Rehabilitation Act**

Plaintiff's fourth claim for relief alleges that she was discriminated against because of her diabetes in violation of the ADA and Rehabilitation Acts.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under Title II, public entities must make reasonable accommodations to assist disabled people while carrying out policies, procedures, and practices. 42 U.S.C. § 12182(b)(2)(A). "Qualified individual with a disability" is defined broadly and includes diabetics. *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003). Section 504 of the Rehabilitation Act, which applies to entities receiving federal funding, tracks the language in Title II of the ADA, and case law interpreting either statute is applicable to the other. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

To make out a *prima facie* case under Title II of the ADA, a plaintiff must establish that:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)(citation omitted).

Here, defendants concede that plaintiff is an individual with a disability and that she is otherwise qualified to receive the benefit of the City of Gresham's services. Therefore, in order to establish a Title II claim, plaintiff must show that, by reason of her disability, she was either "subjected to discrimination" by a public entity or "excluded from participation in or denied the benefits of the services, programs or activities of "any such entity." 42 U.S.C. § 12132. Plaintiff's

9 - OPINION AND ORDER

ADA and Rehabilitation Act claim is advanced under both theories available pursuant to §12132: that defendants intentionally discriminated against plaintiff because of her disability and that defendants discriminated against plaintiff in failing to reasonably accommodate her disability.

Like plaintiff's equal protection claim, her "intentional discrimination" theory requires a showing that defendants' allegedly discriminatory actions were motivated by her disability. *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)(holding that a "'motivating factor' standard is most consistent with the plain language of the statute and the purposes of the ADA"). As discussed above, plaintiff has failed to produce evidence showing that Officer Silva was motivated by a discriminatory intent. Accordingly, plaintiff can not proceed on an intentional discrimination theory for her ADA and Rehabilitation Act claim.

Plaintiff also asserts that defendants failed to reasonably accommodate her disability while providing emergency services. *See Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001)(holding that "the ADA's broad language brings within its scope anything a public entity does," including the services of "local law enforcement agencies")(quotations and citations omitted). Defendants contend that plaintiff cannot proceed on a "reasonable accommodation" theory because "Title II does not apply to officer responses to calls prior to the officers ensuring the threat to human safety has been addressed, regardless of whether the subject has a disability." Defs.' Reply at 6.

Defendants rely on the Fifth Circuit's reasoning in *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000). In *Hainze*, the defendant police officers responded to a call requesting that they transport the suicidal plaintiff to a hospital for mental health treatment. *Id*. at 797. The officers were advised that plaintiff was carrying a knife and was threatening to commit suicide. *Id*. When the officers arrived at the scene, the plaintiff approached the officers with a knife and an officer shot plaintiff in self-defense. *Id*. The plaintiff asserted claims under Title II alleging that he was denied the benefits and

10 - OPINION AND ORDER

services of the defendant county and that the county failed to reasonably accommodate his disability by failing to adopt policies to ensure the protection of those with mental illness. *Id*. 801. The Fifth Circuit rejected his arguments, finding that it was his assault on the officers that denied him the benefits provided by the county. *Id*. The court held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or nor those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id*. The court reasoned that to require "officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents." *Id*. The court was not persuaded that requiring officers to "use less than reasonable force in defending themselves and others, or to hesitate to consider other possible actions in the course of making such split-second decisions, is the type of 'reasonable accommodation' contemplated by Title II." *Id*. at 801-02.

However, "[o]nce the area was secure and there was no threat to human safety, the [defendants] would have been under a duty to reasonably accommodate [plaintiff's] disability in handling and transporting him to a mental health facility." *Id*. at 802; s*ee also Hogan v. City of Easton*, No. 04-759, 2004 WL 1836992, *7 n.3 (E.D. Pa. Aug 17, 2004)(finding the rule set forth in *Hainze* to be inapplicable where "the situation was under control and no one was in danger upon the arrival" of the defendant police officers).

Considering the facts in the light most favorable to plaintiff, at the time Officer Silva tased plaintiff, the situation was under control and rather than inflicting pain upon her, Officer Silva should have consulted with paramedics and administered medical treatment. A question of fact

11 - OPINION AND ORDER

remains as to whether defendants reasonably accommodated plaintiff's diabetes in rendering the City's emergency services. Plaintiff may proceed with her ADA and Rehabilitation Act claim.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [27] is GRANTED in part and DENIED in part. Defendant's Motion is GRANTED as to plaintiff's Fourteenth Amendment and Equal Protection Claims and is DENIED as to plaintiff's Fourth Amendment and ADA and Rehabilitation Act claims.

IT IS SO ORDERED.

Dated this   15   day of January, 2010.

    /s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge